UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22-CR-00084-GFVT-MAS |
| | ) | |
| JOHNIE CARLISLE WHITE, III, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION & ORDER

Before the Court is a motion by the United States to disqualify Noel Caldwell and Jerry Wright ("Caldwell & Wright") as counsel for Defendant Johnie Carlisle White, III ("White"). [DE 18]. The concern raised by the United States is that Caldwell & Wright represented White's co-defendant in the related state criminal prosecution. White responded objecting to the motion [DE 22], and the Court heard arguments from the parties [DE 25]. As part of that hearing, the Court appointed independent counsel, Noah Friend ("Friend"), for the limited purpose of advising White with respect to the alleged conflict. Being sufficiently advised, the Court will deny the United States' motion to disqualify.

## I. RELEVANT BACKGROUND

On January 21, 2022, a Lexington Police officer arrested White, Mario Barba, and Brenton Johnson ("Johnson") after a search of the vehicle they were occupying revealed sixteen pounds of marijuana. [DE 18, Page ID# 50-51]. All three individuals were charged with trafficking marijuana as well as other charges. [*Id*.]. During the pendency of the state proceedings, Caldwell & Wright represented both White and Johnson in defense of the charges through the arraignment and preliminary hearing phases. [*Id*. at Page ID# 52-54; DE 22, Page ID# 69-70]. Ultimately, the

Commonwealth indicated to Caldwell & Wright it was dropping its charges against Johnson, and Johnson waived his right to a preliminary hearing. The grand jury decided not to indict Johnson, and Caldwell & Wright's representation concluded. [DE 18, Page ID# 52-54].

In July of this year, a federal grand jury indicted White for distribution of marijuana based upon his alleged actions that were the subject of the same state charges. [DE 1]. Caldwell & Wright were once again retained by White to defend him. [DE 7]. Johnson, while not indicted, is expected to be called at trial as a witness. Per the United States, "the Government anticipates that Johnson would testify that White stated he (White) would claim the marijuana, that White apologized to Johnson for the arrest, that White would secure a bond for Johnson, and that White paid for Johnson's attorney during the Fayette County District Court proceedings." [DE 18, Page ID# 45-46]. The United States bases this assertion upon a recent interview of Johnson conducted by agents for the Drug Enforcement Agency. [DE 22, Page ID# 80-84].

## II.   ANALYSIS

The Sixth Amendment of the United States Constitution assures every criminal defendant shall have counsel. "The purpose of the Sixth Amendment 'is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.'" *United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000) (quoting *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)). "While '[t]he District Court must recognize a presumption in favor of petitioner's counsel of choice, . . . that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.'" *Id*. (quoting *Wheat*, 486 U.S. at 164). "In situations where a potential conflict of interest may arise, the court's interest in the integrity of the proceedings may trump the defendant's choice." *United States v. Swafford*, 512 F.3d 833, 839 (6th Cir. 2008)*.* "A

2

district court has broad discretion to remove counsel for a potential conflict, even if the defendant wishes to waive the conflict." *United States v. Matsa*, 540 F. App'x 520, 523 (6th Cir. 2013).

Conflicts between counsel and clients can arise in a myriad of circumstances. And as the Supreme Court has made clear, these circumstances matter as to how a court should construe the seriousness of a conflict and any resulting prejudice. *Mickens v. Taylor*, 535 U.S. 162, 175-76 (2002). A lawyer may jointly represent multiple defendants in the same criminal proceedings. Or, as with this case, an attorney may have successive representation "where the attorney represents one defendant at trial and represented another defendant in another proceeding. For example, if an attorney represents two co-defendants during pretrial proceedings in the same case but the charges against one of them are dismissed prior to trial . . . the case involves a matter of successive representation. *White v. White*, No. 5:02-492-KKC, 2021 WL 4236929, at *18 (E.D. Ky. Sept. 16, 2021). "'Successive representation occurs where defense counsel has previously represented a co-defendant or trial witness.' Simultaneous and successive representation differ materially because in the latter, the attorney is no longer beholden to the former client." *Gillard v. Mitchell*, 445 F.3d 883, 890-91 (6th Cir. 2006) (quoting *Moss v. United States*, 323 F. 3d 445, 459 (6th Cir. 2003)). In fact, the "most common example of an actual conflict of interest arising from successive representation occurs where an attorney's former client serves as a government witness against the attorney's current client at trial." *Moss*, 323 F.3d at 460. In cases of "successive representation," a significant fear is that "the lawyer will fail to cross-examine the former client rigorously for fear of revealing or misusing privileged information." *Id*. "This intertwining relationship posed similar concerns to those presented in cases of multiple concurrent representation, that is, 'the high probability of prejudice' and the 'difficulty of proving that prejudice.'" *Id*. at 462 (quoting *Mickens*, 122 S. Ct. at 1245).

3

A.      **DOES A CONFLICT EXIST?**

The Court concludes there is a conflict in the current case. The Court looks both to state ethical rules and federal standards in assessing whether a conflict exists or may surface. *See* LCrR 57.3(c) (addressing discipline for violating "rules of the Kentucky Supreme Court governing professional conduct" or "other conduct unbecoming an officer of the Court"); *United States v. Stiger*, 251 F. App'x 508, 511 (10th Cir. 2007) (referencing, in disqualification context, "local rules of the court" and "standards developed under federal law") (citation omitted). The relevant state professional conduct rule here is Rule 1.9(a) of the Kentucky Rules of Professional Conduct, which discusses loyalties owed by an attorney to a former client.

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

*Id*. First, there is no question, nor do Caldwell & Wright dispute that Johnson, a key witness for the United States in this case, is a former client. They represented him at an arraignment and preliminary hearing, including meeting with him at the courthouse prior to the preliminary hearing to explain to him his rights at said hearing. Second, not only is Johnson a former client of Caldwell & Wright, but Caldwell & Wright's representation of Johnson occurred in the "same or a substantially related matter." The comments to Rule 1.9 state that, "[m]atters are 'substantially related' . . . if they involve the same transaction or legal dispute or if there is otherwise a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Ky. Sup. Ct. R. 3.130(1.9), cmt. 3. This Court finds that Caldwell & Wright's prior representation of Johnson in the state prosecution of the same alleged criminal activity is substantially related to the current attorney-client relationship to White, whom they also represented in that state court action.

4

Third, based upon the ROI, White's interests are materially adverse to Johnson's interests given the latter is expected to testify that the former took full responsibility for the criminal conduct alleged.

With full recognition of the conflict, the next question is whether White wishes to waive the conflict. "In general, in deciding whether to accept a defendant's waiver of conflict-free counsel, a district court must determine (i) whether the defendant's waiver is sufficient and (ii) whether the conflict is of a type which can be waived." *United States v. Cardin*, 577 F. App'x 546, 552 (6th Cir. 2014). "The first inquiry focuses on the specific defendant before the district court. The second inquiry focuses on the integrity of the judicial system generally." *Id*. "The district court is to be given wide latitude in making such determinations [regarding disqualification] and a decision will be upheld unless arbitrary or without adequate reasons." *United States v. Swafford*, 512 F.3d 833, 839 (6th Cir. 2008) (internal quotation marks omitted); *Wheat*, 108 S. Ct. at 1699 ("[T]he district court must be allowed substantial latitude in refusing waivers of conflicts of interest . . . in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."). The Court will address each of these questions in turn.

**B.** **DOES WHITE KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVE THE CONFLICT?**

Generally, a defendant may, "in the absence of compelling circumstances," waive the right to conflict-free counsel. *United States v. Davis*, 490 F.3d 541, 548-49 (6th Cir. 2007) (quoting *United States v. Reese*, 699 F.2d 803, 805 (6th Cir. 1983) (per curiam));[1] *see also United States v.*

---

[1] In a contemporaneous case, the Sixth Circuit questioned whether this standard—accept a waiver absent compelling circumstances—survived *Wheat's* "substantial latitude" analysis. *United States v. Brock*, 501 F.3d 762, 772 (6th Cir. 2007) (citing *Reese* and noting the potential disharmony with *Wheat*), *abrogated on other grounds by Ocasio v. United States*, 136 S. Ct. 1423

*Jones*, 381 F.3d 114, 117-20 (6th Cir. 2004) (court may accept valid waiver of right to conflict-free counsel where only potential conflict exists).  Of course, any waiver must reflect that the party waiving is competent and acting in a knowing, voluntary, and intelligent fashion.  *Jones*, 381 F.3d at 119; *United States v. Curcio*, 680 F.2d 881, 887 (2d Cir. 1982).  "To assess the validity of a waiver of the right to conflict-free counsel, the Second Circuit established the following now venerated procedure, which the Court here adopted: (1) advise of right to conflict-free counsel; (2) instruct as to dangers; (3) permit conference with chosen counsel; (4) encourage independent advice; (5) allow reasonable time for decision; and (6) engage in narrative colloquy to ensure that defendant understands risks and freely chooses to run them."  *United States v. Mahone*, No. 5:17-CR-52-KKC-REW, 2017 WL 1823063, at *3 (E.D. Ky. May 5, 2017) (citing *United States v. Rodriguez*, 968 F.2d 130, 138-39 (2d Cir. 1992) (outlining steps for a "*Curcio* hearing" in context of conflict waiver)).

The Court found White competent based on questioning under oath.  Moreover, at the *Curcio* hearing, attorneys Caldwell & Wright and Friend were provided ample opportunity to meet with and discuss with White the potential nature of the conflict as well as the dangers such a conflict might entail.  The Court also discussed with White, on the record, the nature of the conflict and its potential dangers.  Caldwell & Wright persisted their position that they believed they could ethically represent White fully and zealously without any concern of violating any ethical obligation.  Under oath, White stated he understood his right to conflict free counsel, the nature of the current conflict, and how that conflict may impact his representation going forward, including

(2016).  However, *Davis* did reaffirm the "compelling circumstances" standard, and the Sixth Circuit earlier had likewise applied the rule in a post-*Wheat* decision, *United States v. Guerrero*, No. 88-5986, 1990 WL 166414, at *6 (6th Cir. Nov. 1, 1990) ("[W]e hereby reaffirm our holding in Reese and require the trial court to accept a valid waiver absent exceptional circumstances."); *but see United States v. Mays*, 69 F.3d 116, 122 (6th Cir. 1995) (recognizing, as a general matter, that the "broad language of *Reese* . . . has been implicitly limited by subsequent decisions").

cross-examination of Johnson at trial and possible plea negotiations.  He memorialized his desire in writing.  [DE 26].

Consequently, the Court concludes White knowingly, intelligently, and voluntarily waived his right to conflict-free counsel.

## C.   MAY THE COURT ACCEPT THE WAIVER?

While a defendant has the right to waive conflict-free counsel, the wavier is not absolute and is subject to the Court's interests in Sixth Amendment principles, judgment validity, and ethical practice, which *Wheat* recognized.  *See* 108 S. Ct. at 1698; *accord Jones*, 381 F.3d at 119 (stating the "disqualification issue . . . implicates not only the accused's right to counsel, but also the interests of the judiciary in preserving the integrity of its processes and the government's interest in ensuring a fair and just verdict").  Thus, the Supreme Court grants trial courts "substantial latitude in refusing waivers of conflicts of interest[.]"  *Wheat*, 486 U.S. at 163; *accord United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (recognizing trial courts' "wide latitude in balancing the right to counsel of choice against [*e.g.*,] the needs of fairness").  Ultimately, the Court may reject a waiver where there exists either an actual or potential conflict.  *Wheat*, 486 U.S. at 162.

Precise forecasting of conflicts that could arise is impossible, greatly complicating the process here.  *Id.*  "Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly."  *Id.*  In some scenarios, the greater risk is not what an attorney acknowledging a prior joint or successive representation situation will do, but what the potential conflict(s) may prevent him from doing.  *Curcio*, 680 F.2d at 887.  When evaluating claims for disqualification, the court should place a presumption in favor of defendant's

counsel of choice, but "that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict," even if the Defendant wishes to waive the conflict. *United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000); *see also United States v. Matsa*, 540 F. App'x 520, 523 (6th Cir. 2013), *Wheat*, 486 U.S. at 153. When a motion for disqualification comes before the court, the court must be mindful of the ability of parties to use this as a "potent weapon" and should carefully balance "competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988); *see also Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1352 (6th Cir. 1993).

The dangers of successive representation are serious. Both parties cite *Moss v. United States*, 323 F.3d 445 (6th Cir. 2003). Although the dispute was measured through the lens of a habeas petition, the Sixth Circuit's analysis of the dangers of successive representation are instructive. There, attorney Timothy Murphy represented Robert Moss during the initial phases of a criminal case, including traveling to interview potential witnesses, corresponding with the United States, and represented Moss at his arraignment following issuance of the indictment. Murphy soon after terminated his representation. *Id*. at 450–53. "While this attorney-client relationship [between Murphy and Moss] ceased shortly after the arraignment, it is with little hesitation that we conclude that Attorney Murphy represented Moss during the pre-indictment period." *Id*. at 459. Following the arraignment, Murphy no longer represented Moss, but continued to represent co-defendant Ronald Kohn, although he was paid by Moss for such representation. *Id*. at 450–53. Following his conviction, Moss sought habeas review. The Sixth Circuit described its concern with successive representation generally. "The fear in successive representation cases is that the lawyer will fail to cross-examine the former client rigorously for

8

fear of revealing or misusing privileged information.  Thus, the most common example of an actual conflict of interest arising from successive representation occurs where an attorney's former client serves as a government witness against the attorney's current client at trial."  *Id*. at 460 (internal citations omitted).  "[T]he probability of prejudice dramatically increases in circumstances where the attorney represented a co-defendant during the pre-indictment phase of the same proceeding." *Id*. at 462.  In the end, the Sixth Circuit concluded Murphy's successive representation was problematic.  "We determine that Attorney Murphy's successive representations of Moss and Kohn during inextricably linked proceedings, coupled with evidence that Moss paid at least some part of Kohn's legal fees to Attorney Murphy, creates a sufficient likelihood of prejudice . . . ." *Id*. at 463.

Again, while *Moss* is instructive, the facts are different here.  Caldwell & Wright's relationship with Johnson was beyond brief.  They met with him briefly at his arraignment and then again spoke with him just prior to his preliminary hearing that was eventually waived when the Commonwealth indicated its intent to drop the charges.  Caldwell & Wright did not discuss the merits of the charges again Johnson because they had no discovery from the Commonwealth at that point.  Caldwell & Wright were neither involved in any bond negotiations with the Commonwealth nor plea negotiations.  Caldwell & Wright made no effort to investigate the charges whatsoever.  And while White paid Caldwell & Wright were to represent Johnson, that single fact alone is not dispositive.  Turning back to *Moss*, at a distance, the current matter and *Moss* have similarities concerning successive representation.  But the evidence falls short of the situation in *Moss*.  The Court takes the concerns raised in *Moss* seriously as "*Wheat's* legacy is judicial skepticism that an attorney faced with the prospect of cross-examining his own client during a criminal proceeding can effectively represent either the witness or the defendant on whose

behalf he performs the examination." *United States v. Dively*, No. 3:07-01, 2007 WL 2008501, at *4 (W.D. Pa. July 5, 2007). Yet, in "balancing the right to counsel of choice against [*e.g.*,] the needs of fairness[,]" the Court finds the right to counsel wins out given these facts. *Gonzalez-Lopez*, 548 U.S. at 152. At the hearing, the United States agreed that these facts, while certainly engendering a conversation about the nature of the conflict and mandating White's knowing waiver of the conflict, do not require the Court to reject the waiver.

### III.     CONCLUSION

Accordingly, as set forth above, the Court accepts White's waiver of the right to conflict-free counsel and **DENIES** the motion of the United States [DE 18].

The Court issues this Order resolving a non-dispositive pretrial matter under 28 U.S.C. § 636(b)(1)(A). *Affeldt v. Carr*, 628 F. Supp. 1097 (N.D. Ohio 1985) (holding that a motion to disqualify counsel is a non-case-dispositive pretrial matter properly referred to a magistrate judge under § 636(b)(1)(A)). Any party objecting to this Order should consult the statute and Federal Rule of Criminal Procedure 59(a) concerning its right of and the mechanics for reconsideration before the District Court. Failure to object waives a party's right to review.

Entered this the 12th day of December, 2022.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY